# 2003 DTA 92

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL III DE ARECIBO/UTUADO

JOSE L. OTERO MERCADO Y SU ESPOSA EMILIA RODRIGUEZ ROBLES Y LA
SOC. LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Querellantes-Recurridos

v.

TOYOTA DE PUERTO RICO CORP.; TRIANGLE TOYOTA,
TOYOTA FINANCIAL SERVICES
Querellado-Recurrente

Núm. KLRA-2002-00699

San Juan, Puerto Rico, a 20 de mayo de 2003

Panel integrado por su Presidente, el Juez Soler Aquino
y los Jueces Colón Birriel y Escribano Medina

Escribano Medina, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente S.H.V.P. Motor Corp. h/n/c Triangle Toyota, en adelante Triangle Toyota, nos solicita la revisión de la resolución emitida el 7 de mayo de 2002 por la Oficina Regional de Arecibo del Departamento de Asuntos del Consumidor, en adelante DACO. Dicho foro declaró *"nulos e inexistentes los contratos de compraventa y Venta al por Menor a Plazos"* celebrados entre el recurrido José L. Otero Mercado y Triangle Toyota al entender que el consentimiento del recurrido había estado viciado por dolo al alegadamente haber sido engañado por la vendedora.

### I

El 25 de agosto de 2001, el recurrido le compró a Triangle Toyota un vehículo de motor *"nuevo"* marca Toyota, modelo Camry del año 2001 por el precio de veinte mil ($20,000.00) dólares. Cabe señalar que dicho vehículo había sido utilizado por la recurrente como unidad de demostración ▅ y que *dicho hecho le constaba personalmente al recurrido de conformidad con lo indicado en la solicitud de crédito.* ▅ Véase la página 19 del Apéndice del Recurso de Revisión. Habiendo otorgado un pronto pago de cuatro mil ($4,000.00) dólares, y luego de añadir los cargos por financiamiento, seguro y otras partidas, la suma adeudada resultó ser diecinueve mil diecisiete ($19,017.00) dólares. El vehículo fue financiado a través de Toyota Financial Services y sería pagadero en setenta y dos (72) plazos mensuales de trescientos ochenta y dos dólares con treinta y un centavos ($382.31) cada uno. Mientras el recurrido estaba comprando el vehículo, éste se percató que una de las puertas del mismo no cerraba bien. Véanse las páginas 7, 36, 37 de la Transcripción de la Prueba.

Aunque el recurrido **no pagó mensualidad alguna**, el 11 de septiembre de 2001, presentó una querella ante DACO donde alegó que el referido vehículo de motor presentaba una serie de desperfectos, tales como que una de las puertas no cerraba bien, ya que cuando la misma se lograba cerrar, ésta chocaba con el *"dash"* y que además los guardalodos del vehículo no eran simétricos. Posteriormente, DACO celebró una vista de mediación y durante dicha vista las partes solicitaron que dicha agencia inspeccionara la unidad en controversia. Así las cosas, el 12 de diciembre de 2001, un técnico automotriz de la Unidad de Investigaciones de DACO dictaminó en un informe que el vehículo tenía una serie de descuadres en el bonete, en la puerta delantera izquierda y en el cristal trasero. Debemos hacer constar que en el referido informe no se indicó que el alegado descuadre de la puerta afectara su funcionamiento.

Luego de la celebración de la vista de adjudicación, el 7 de mayo de 2002, DACO determinó que procedía que se declararan nulos los contratos suscritos entre las partes, ya que el consentimiento prestado por el recurrido había estado viciado por *"dolo y/o páctica engañosa de parte de la co-querellada Triangle Toyota."* Véase la página 26 del Apéndice del Recurso de Revisión.

Resulta pertinente indicar que en sus determinaciones de hechos, DACO señaló que las observaciones hechas por su técnico automotriz luego de la inspección realizada el 12 de diciembre de 2001, coincidían con las que el señor Guillermo Cabrera h/n/c Cabrera Auto Collision hiciera el 5 de diciembre de 2001. En el referido informe sobre la inspección del vehículo, dicho *"hojalatero de 30 años de experiencia"* indicó que:

*"el frente estaba descuadrado completo, que el panel de fusible estaba fuera de sitio y que la puerta LH no cierra perfectamente, porque el panel de instrumento se lo impide; al ser impactado no quedó correctamente ensamblado. Al continuar observando el vehículo por la parte trasera, pude observar el cristal trasero que está fuera de sitio."* Véase la página 16 del Apéndice del Recurso de Revisión.

Además, DACO entendió que no se había sometido prueba de que el impacto y la reparación hubieran sido posteriores a la compraventa, ni que se le informara al recurrido de que el vehículo objeto de la querella había impactado y luego reparado, ni que se le advirtiera al recurrido que dicho vehículo había sido utilizado como unidad de demostración, ni que su precio hubiera sido establecido tomando en consideración dicha condición. *Id.*

Entendiendo que Triangle Toyota supo en todo momento que el automóvil había sido impactado y luego reparado y que aún así ocultó dicha información al venderlo, DACO declaró nulos los contratos y concluyó que la vendedora debía rembolsar el dinero recibido en concepto de pronto pago; o sea, cuatro mil ($4,000.00) dólares, además del interés legal correspondiente.

Así las cosas, el 28 de mayo de 2002, Triangle Toyota presentó una Moción de Reconsideración donde solicitó que se desestimara la querella por:

*"1) no haberse incluido y notificado oportunamente la inclusión de la acción de nulidad por vicio del consentimiento y/o práctica engañosa, y*

*2) por el querellante no haber establecido que las condiciones presentadas por su vehículo lo hacen impropio para el uso a que se le destina; que disminuyan de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella; que disminuyan sustancialmente el valor del vehículo y/o que dichas condiciones constituian "defectos" que no estaban a "simple vista"."*

El 3 de junio de 2002, DACO acogió la solicitud de reconsideración y determinó resolverla posteriormente. Sin embargo, DACO no cumplió con el término de noventa (90) días dispuesto por la sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, Ley Número 170 de 12 de agosto de 1988, en adelante L.P.A.U., 3 L.P. R.A. sec. 2165, para resolver definitivamente la solicitud de reconsideración acogida.

Inconforme, Triangle Toyota nos presenta los siguientes señalamientos de error:

*"1. Erró el DACO al recibir en evidencia, a pesar de la oportuna objeción del co querellado Triangle, un informe preparado por el Sr. Guillermo Cabrera h/n/c Cabrera Auto Collision, a pesar de que éste no estaba disponible para ser contrainterrogado y el informe constituia prueba de referencia.*

*2. Erró el DACO al no desestimar la querella, a pesar de que prueba sustancial contenida en el expediente administrativo no apoya la rescisión del contrato de compraventa por alegados vicios y/o defectos ocultos.*

*3. Erró el DACO al permitir la enmienda de la querella durante la vista administrativa y al aceptar en evidencia prueba sobre reclamaciones no incluidas en la querella original, a pesar de las oportunas y fundamentadas objeciones de la co querellada Triangle.*

*4. Erró el DACO al concluir, como cuestión de hecho, que la co querellada Triangle no le notificó al querellante que el vehículo de motor fue utilizado con anterioridad a la venta como un vehículo de demostración, a pesar de que la evidencia sustancial que obra en el expediente administrativo y sus propias conclusiones de hecho no apoyan dicha conclusión.*

*5. Erró el DACO al concluir, como cuestión de hecho, que el vehículo de motor objeto de la querella fue impactado y luego reparado, a pesar de que dicha determinación no está apoyada por la evidencia sustancial contenida en el expediente administrativo tomado en su totalidad e inclusive fue contradicha por el propio querellante.*

*6. Erró el DACO al declarar nulo el contrato de compraventa y el contrato de venta al por menor a plazos por alegado vicio del consentimiento por dolo y/o práctica engañosa de la co querellada Triangle."*

Luego de examinadas las posiciones de las partes y el derecho aplicable, estamos en condición de resolver.

## II

Para lograr arribar a la solución justiciera de esta controversia es necesario que primero expongamos la normativa jurídica pertinente. La revisión judicial de decisiones administrativas abarca tres (3) áreas, a saber: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos, conforme al criterio de la evidencia sustancial, y la revisión completa y absoluta de las conclusiones de derecho. *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85, 93 (1997).

Es principio ampliamente establecido por nuestra jurisprudencia que las conclusiones de hechos de los organismos administrativos especializados, como DACO, merecen gran consideración y respeto por este Tribunal de Circuito de Apelaciones si las mismas están sostenidas por evidencia sustancial. 3 L.P.R.A. sec. 2175; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 532 (1993). El concepto de evidencia sustancial ha sido definido por el Tribunal Supremo como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437 (1997). La evidencia debe ser considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. *Id.*

Corresponde así a la parte que impugna la determinación de una agencia administrativa, el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Véase, *Henríquez Soto v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987). En igual medida, para alegar que la evidencia en la cual se fundamentaron las determinaciones de hechos de la agencia no es sustancial, la parte afectada deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad

de la prueba que tuvo ante su consideración. *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 131 (1998).

Las conclusiones de derecho de la agencia, distinto a las determinaciones de hechos, podrán ser revisadas en todos sus aspectos por este foro, sin sujeción a norma o criterio alguno. *Miranda v. C.E.E.,* 141 D.P.R. 775, 787 (1996). Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal descarte libremente las conclusiones e interpretaciones de la agencia. *Id.* Por ello, el Tribunal Supremo ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en dichas decisiones, tendrán gran deferencia al ser revisadas por este Tribunal. *Viajes Gallardo v. Clavell,* 131 D.P.R. 275, 289-290 (1992). Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. *Reyes Salcedo v. Policía de P.R., supra,* pág. 94. Sin embargo, dicha deferencia y respeto no significa una renuncia por parte de los tribunales en su función revisora. Por ello, el foro apelativo tendrá facultad para revocar la interpretación administrativa cuando la misma no sea válida por haberse cometido un error en la aplicación del derecho. Véase, *Fuertes y otros v. A.R.PE.,* 134 D.P.R. 947, 953 (1993).

Luego de hacer estos señalamientos generales sobre los contornos de nuestra función revisora, procedemos a analizar los distintos señalamientos de error presentados por Triangle Toyota.

### III

En su primer señalamiento de error, Triangle Toyota nos indica que DACO erró al admitir en evidencia un informe preparado por un hojalatero (Guillermo Cabrera h/n/c Cabrera Auto Collision) que no se encontraba disponible para ser contrainterrogado en la vista administrativa. El Oficial Examinador determinó que *"el documento no está siendo prueba del `expertise´ de la parte que lo suscribe, sino como gestión de que él ha hecho para saber de los defectos del vehículo."* Véanse las páginas 19-20 de la Transcripción de la Prueba. Sin embargo, en la determinación de hechos número 9, DACO señaló que:

*"Los hallazgos del técnico automotriz del DACO coinciden con las observaciones de la inspección del vehículo objeto de la querella, realizada el 5 de diciembre de 2001, por el señor Guillermo Cabrera, h/n/c Cabrera Auto Collision."* Véase la página 22 del Apéndice del Recurso de Revisión.

Resulta indiscutible que en su determinación, DACO entendió que el vehículo había sido impactado con anterioridad a la venta del mismo. Sin embargo, dicha conclusión surgió del informe del hojalatero y no del inspector de DACO. Tratándose de prueba de referencia, ¿podía admitirla DACO para tomar su determinación final?

La Sección 3.13(e) de la L.P.A.U., 3 L.P.R.A. sec. 2163(e), dispone que las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero que los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento. La razón de ser de la norma que postula la no aplicación de las reglas procesales y de evidencia de los tribunales a los procedimientos administrativos, es para evitar las trabas procesales de los tribunales de justicia. *López Vives v. Policía de P.R.,* 118 D.P.R. 219, 231 (1987). El proceso administrativo debe ser ágil y sencillo, que propicie su uso eficiente por parte de las personas legas. *Id.*

Como es sabido, la prueba de referencia es una declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. 32 L.P.R.A. Ap. IV, R. 60(C). Por otro lado, como regla general, la prueba de referencia es inadmisible. 32 L.P.R.A. Ap. IV, R. 61. Sin embargo, en cuanto a la admisibilidad de la prueba de referencia en los procedimientos de adjudicación en la esfera administrativa, la regla general señala que la misma sí es admisible en evidencia. *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229-230 (1938); *E. & R. Erectors, Inc. v. Secretary of Labor,* 107 F.3d 157 (3rd Cir. 1997); *Keller v. Sullivan,* 928 F.2d 227 (7th Cir. 1991). Véase, además, *Ramírez Bayrón v. D.A.CO.,* KLRA-97-

Una agencia puede descansar su determinación sólo en prueba de referencia, aun cuando ésta sea contradicha por prueba, si la prueba de referencia es del tipo que un hombre prudente y razonable descansa en ella para llevar a cabo sus negocios. *Richardson v. Perales*, 402 U.S. 389 (1971); *Leitman v. McAusland*, 934 F.2d 46, 51 (5th Cir. 1991); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Forum, 2da ed. Rev., 2001, sec. 9.4, pág. 555. El Tribunal Supremo de los Estados Unidos ha indicado que "*mere uncorroborated hearsay or rumor does not constitute substantial evidence.*" *Consolidated Edison Co. v. N.L.R.B., supra,* pág. 230. En *Richardson v. Perales, supra,* pág. 402, se señaló que:

"*We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*"

Se ha indicado además que:

"*hearsay may constitute substantial evidence on the condition that an opportunity to cross-examine the witness who made the hearsay statements is offered even if that opportunity is not exercised.*" Stein *et al., Administrative Law,* LexisNexis, 2002, Vol. 4, § 26.02, págs. 26-12.

En el caso ante nuestra consideración, entendemos que admitir esta prueba de referencia no abonaría a la consecución de la justicia. ■ La admisibilidad de este informe es crucial en este caso, ya que una de las razones que DACO invocó para determinar que Triangle Toyota había incurrido en dolo contractual fue que alegadamente ésta había ocultado que el vehículo que le vendió al recurrido había sido chocado con anterioridad. Puesto que el consentimiento de las partes es un requisito indispensable para la validez de los contratos, el consentimiento prestado por error o dolo será uno viciado que convertirá al contrato en anulable, para lo cual, quien invoca la causa de anulabilidad, debe probarla satisfactoriamente. *Díaz y Arrarás v. Bascos,* 5 D.P.R. 97 (1904).

En cuanto al aspecto procesal probatorio, el dolo, al igual que el fraude, no se presume, *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 478 (1980), sino que debe probarse mediante evidencia directa, circunstancial o mediante inferencias. *Colón v. Promo Motor Imports, Inc.,* 144 D.P.R. 659, 669 (1997). En la determinación sobre si existió dolo que anulara el consentimiento prestado por una de las partes contratantes, es necesario considerar, entre otras cosas, la preparación académica del perjudicado así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. *Colón v. Promo Motor Imports, Inc., supra,* pág. 669; *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 519 (1988). Debemos recordar además que en algunos casos es posible que el dolo no surja de un hecho, sino del conjunto y la evolución de circunstancias y manejos engañosos. *Acosta & Rodas, Inc. v. PRAICO,* 112 D.P.R. 583, 616 (1982).

Aunque el informe es admisible como prueba que el recurrido realizó gestiones para conocer la magnitud de los defectos del vehículo, sin embargo, el mismo no puede ser utilizado para demostrar que el vehículo en cuestión había sido impactado. Entendemos que si el recurrido quería probar que Triangle Toyota había incurrido en dolo contractual, éste debió presentar prueba más sólida para establecer dicha contención. Triangle Toyota no incurrió en conducta dolosa ni engañosa al contratar con el recurrido.

## IV

Por otro lado, Triangle Toyota señala que DACO erró al permitir que se enmendara la querella para que se

entendiera que ésta le había hecho creer al recurrido que el vehículo vendido era nuevo y no un vehículo de demostración. Como DACO fundamentó su determinación en que Triangle Toyota había incurrido en una práctica dolosa, entonces resulta esencial el planteamiento sobre la procedencia de la enmienda a las alegaciones.

La Sección 3.1 de la L.P.A.U. dispone, en lo pertinente, que en todo procedimiento adjudicativo formal se salvaguardará el derecho a ser notificado oportunamente de los cargos o querellas o reclamos en contra de una parte. 3 L.P.R.A. sec. 2151. Véanse, además, *Magriz v. Empresas Nativas,* 143 D.P.R. 63, 70 (1997); *Ortiz Cruz v. Junta Hípica,* 101 D.P.R. 791, 795 (1973). Este derecho constituye una garantía básica del debido proceso de ley. *Id.*

Durante el proceso administrativo que nos concierne, en varias ocasiones, DACO permitió que durante la vista los recurrentes enmendaran sus alegaciones mediante la presentación de su prueba. Nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso de procedimientos administrativos, siempre y cuando las mismas sean compatibles con la rapidez y la relativa informalidad que deben prevalecer en los procedimientos administrativos. ■ Véase, *Qume Caribe, Inc. v. Srio. de Hacienda,* 153 D.P.R. ___ (2001), **2001 J.T.S. 41**. Examinemos la normativa aplicable a las enmiendas para conformar las alegaciones con la prueba. La Regla 13.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 13.2, dispone que:

*"Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán a todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda de las alegaciones que fuere necesaria para conformarlas a la evidencia a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse a moción de cualquiera de las partes en cualquier momento, aún después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objetare la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas y deberá hacerlo liberalmente, **siempre que con ello se facilite la presentación del caso y la parte que se oponga no demuestre a satisfacción del tribunal que la admisión de tal prueba perjudicaría su reclamación o defensa.** El tribunal podrá conceder una suspensión para permitir a la parte opositora controvertir dicha prueba.*

*En todo caso en que hubiere alguna parte en rebeldía por falta de comparecencia, se estará a lo dispuesto en las Reglas 43.6 y 67.1."* ■ Énfasis nuestro.

Las enmiendas en el juicio a una demanda están condicionadas a la consideración del momento en que se soliciten, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente y el perjuicio que la misma causaría a la otra parte. *Epifanio Vidal, Inc. v. Suro,* 103 D.P.R. 793, 796 (1975). Para que no se admita la enmienda a las alegaciones por la prueba es necesario que el oponente demuestre que sufrirá algún perjuicio real. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, **Publicaciones JTS**, 2000, T. I, pág. 324. Véanse, además, *Johnson v. Oroweat Foods Co.,* 785 F.2d 503 (4th Cir. 1986); *Iodice v. Calabrese,* 345 F.Supp. 248 (S.D.N.Y. 1972). Sin duda alguna, el que no se le notifique oportunamente a una parte de la pretensión de la otra de **cambiar sustancialmente** las alegaciones, constituye un perjuicio significativo.

De una lectura de la transcripción, resulta obvio que Triangle Toyota se opuso oportunamente a las enmiendas que los recurrentes pretendían incorporar a las alegaciones. Véase, por ejemplo, la página 8 de la Transcripción de la Prueba. DACO erró al permitir las enmiendas a la querella. ■

## V

Por último, debemos discutir la normativa aplicable a los casos relacionados a los defectos en los vehículos de motor. El Artículo 1375 del Código Civil de Puerto Rico provee para que todo comprador pueda optar entre

desistir del contrato o reducir el precio de la compraventa, toda vez que exista la presencia de alegados vicios ocultos en la cosa vendida. 31 L.P.R.A. sec. 3843. El vendedor no será responsable por los defectos manifiestos o aquéllos que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos. 31 L.P.R.A. sec. 3841.

Si una vez verificada la entrega, se demuestra el incumplimiento por parte del vendedor de garantizar la plena posesión económica de la cosa vendida, el comprador tiene a su favor una pretensión de redhibición. *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387, 396 (1999). El comprador tiene la opción de desistir del contrato, recobrando lo que pagó, o de dejar la venta subsistente, pero solicitar una rebaja en la cantidad del precio, aun cuando la venta subsista. 31 L.P.R.A. sec. 3843; *Boyd v. Tribunal Superior*, 101 D.P.R. 651, 655-656 (1973).

En estos casos es necesario determinar si los vicios o defectos son de naturaleza tal que justifiquen la acción redhibitoria. *D.A.C.O. v. Marcelino Mercury, Inc.*, 105 D.P.R. 80, 83-84 (1976). El Tribunal Supremo ha indicado que constituyen vicios redhibitorios o cuantiminosos aquellos defectos que excedan de las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor. *Domínguez v. Caguas Expressway Motors, supra*, pág. 397; *García Viera v. Ciudad Chevrolet, Inc.*, 110 D.P.R. 158, 162 (1980); *D.A.C.O. v. Marcelino Mercury, Inc., supra*, pág. 84. ▮ El comprador no tiene que demostrar específicamente cuál o cuáles piezas están defectuosas. *García Viera v. Ciudad Chevrolet, Inc., supra*, pág. 163. En una acción redhibitoria por vicios ocultos en vehículos de motor defectuosos, solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió. *Ford Motor Co. v. Benet*, 106 D.P.R. 232, 238 (1977); *Ferrer v. General Motors Corp.*, 100 D.P.R. 246, 253 (1971).

Como es sabido, para que los vicios ocultos obliguen al vendedor a proveer saneamiento, es necesario cumplir con los siguientes requisitos: (1) éstos no deben ser conocidos por el adquirente; (b) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no lo habría comprado o habría dado menos precio por ella; (c) que sea preexistente a la venta; y (d) que se ejercite la acción en el plazo legal, que es de seis meses contados desde la entrega de la cosa vendida. *Pérez v. VPH Motor Corp.*, 152 D.P.R. ___ (2000), **2000 J.T.S. 177**; *Ferrer v. General Motors Corp., supra*.

Por su parte, ante una causa de acción de esta naturaleza, a la parte vendedora se le han reconocido varias defensas, entre ellas: que el adquirente del vehículo de motor le dio un uso indebido; que el vehículo de motor no tenía defectos de fabricación; y que las reparaciones fueron adecuadas. *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834, 842 (1978).

Como regla general, se ha resuelto que, de proceder la acción redhibitoria, incumbe a la parte vendedora la restitución de los gastos que el comprador pagó y que dicha responsabilidad se extiende al fabricante en virtud de la garantía que cobija al vehículo. *Nadal v. Hull Dobbs*, 102 D.P.R. 653 (1974); *Ferrer v. General Motors Corp., supra*.

Sin embargo, en el caso ante nuestra consideración, ¿procedía que DACO declarara nulo el contrato celebrado entre Triangle Toyota y el recurrido? Ya hemos mencionado que no hubo engaño o dolo alguno que viciara el consentimiento del recurrido. ¿Procede entonces la acción redhibitoria por vicios ocultos? ▮

Durante la celebración de la vista administrativa, el recurrido admitió que había notado defectos en la puerta cuando se encontraba comprando el vehículo. Véanse las páginas 7, 36, 37 de la Transcripción de la Prueba. Por su parte, el técnico automotriz Luis Iván Rodríguez testificó que cuando observó los "*defectos*" del vehículo del recurrido entendió que los mismos realmente no eran "*defectos*", sino que se trataba de una situación

comercialmente aceptable. Véanse las páginas 72, 79-82 de la Transcripción de la Prueba. Dicho perito indicó que la puerta cerraba de forma normal. Véase la página 80 de la Transcripción de la Prueba. En la misma línea, el técnico automotriz Michael López testificó que las faltas o imperfecciones que exhibía el vehículo no afectaban el uso ni la seguridad del mismo.

Todos estos factores nos llevan a concluir que Triangle Toyota no está obligada al saneamiento. Al comprar el vehículo, el recurrido conocía los defectos de la puerta, los cuales según el testimonio de los peritos que testificaron durante la vista no eran propiamente defectos que afectaran el vehículo, sino que se trataba de una situación que era comercialmente aceptable. En cuanto a los otros "*problemas*" del vehículo, no podemos decir que éstos mermen notablemente el valor del mismo. Los errores señalados fueron cometidos.

Por los fundamentos anteriormente expresados, se expide el auto de revisión y se revoca la determinación recurrida.

El Juez Soler Aquino disiente sin opinión escrita.

Lo acordó el Tribunal y lo certifica la Señora Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

## ESCOLIOS 2003 DTA 92

**1.** En el "*Contrato de Venta al Por Menor a Plazos*" se indica que aunque el vehículo era "*nuevo*", el millaje del mismo al momento de la venta era de 840 millas recorridas. De conformidad con el lenguaje de dicho contrato, el recurrido **reconoció mediante su firma que había recibido el vehículo en buenas condiciones**. Véase la página 18 del Apéndice del Recurso de Revisión. Según surgió durante la vista administrativa, precisamente por tratarse de un vehículo de demostración, al recurrido se le hizo una rebaja en el precio de cuatro mil ($4,500.00) dólares. Véase la página 91 de la Transcripción de la Prueba.

**2.** En vista de ello, es obvio que DACO erró al determinar que Triangle Toyota había engañado al recurrido. En ningún lugar se ha alegado que el recurrido no supiera leer o que le hubieran forzado a firmar los documentos.

**3.** La regla general de exclusión de prueba de referencia está fundada, más que en cualquier otra cosa, en la necesidad de confrontar al declarante con la parte contra la cual se ofrece la declaración y así evitar o aminorar los riesgos inherentes a la prueba de referencia. E. L. Chiesa, *Tratado de Derecho Probatorio*, Santo Domingo, Editora Corripio, C. por A., Tomo II, 1999, pág. 635. El Tribunal Supremo ha reconocido que en los juicios civiles, el debido proceso de ley le reconoce a las partes litigantes el derecho a confrontarse con la prueba presentada en su contra. *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.,* 123 D.P.R. 1, 35 (1988).

**4.** Debemos indicar que las Reglas pertinentes del proceso adjudicativo de DACO recogen la normativa de la Regla 13.2 de las de Procedimiento Civil.

**5.** Véase, además, *Srio. del Trabajo v. Vélez*, 86 D.P.R. 585, 589 (1962). Debemos indicar que las Reglas pertinentes del proceso adjudicativo de DACO recogen la normativa de la Regla 13.2 de las de Procedimiento Civil.

**6.** De todas maneras, el recurrido no se puede quejar porque el vehículo hubiera sido utilizado como demostración, ya que dicho hecho constaba en la solicitud de crédito que éste **voluntariamente firmó**. Véase la página 19 del Apéndice del Recurso de Revisión.

**7.** El Tribunal Supremo indicó, además, que aunque un vicio no sea de naturaleza redhibitoria, la vendedora o el fabricante pueden venir obligados a repararlo por mor del contrato de garantía que se haya otorgado entre las partes y pueden incurrir en responsabilidad si la reparación es inadecuada y causa perjuicios. *García Viera v. Ciudad Chervrolet, Inc., supra*, pág. 163; 31 L.P.R.A. sec. 3018.

**8.** La intervención de este Tribunal de Circuito de Apelaciones se justifica cuando el foro administrativo ha errado de forma manifiesta en la apreciación de los hechos que dan base a su determinación. *Domínguez v. Caguas Expressway Motors, supra*, pág. 397.